**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VIRGINIA CHAVEZ,                    ) Case No. EDCV 14-1547-JPR
                                    )
                  Plaintiff,        )
                                    )
            v.                      ) **MEMORANDUM OPINION AND ORDER**
                                    ) **AFFIRMING COMMISSIONER**
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security,                           )
                                    )
                  Defendant.        )
                                    )

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed July 9, 2015, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

1

## II.   BACKGROUND

Plaintiff was born in 1958.  (Administrative Record ("AR") 176.)  She received a master's degree in educational counseling and worked as an employment-claim aide, census taker, and medical service technician.  (AR 20, 35.)

On January 21, 2011, Plaintiff filed applications for DIB and SSI (AR 176), alleging that she had been unable to work since January 5, 2010, because of "right leg injury"; tendonitis in both arms, her right shoulder, and her right leg; and lower- and upper-back pain (AR 207).  After her applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge.  (AR 75.)  A hearing was held on February 8, 2013, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 33-60.)  In a written decision issued February 22, 2013, the ALJ found Plaintiff not disabled.  (AR 10-21.)  On June 5, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1.) This action followed.

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

2

1   It is more than a scintilla but less than a preponderance.

2   Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

3   Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether

4   substantial evidence supports a finding, the reviewing court

5   "must review the administrative record as a whole, weighing both

6   the evidence that supports and the evidence that detracts from

7   the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715,

8   720 (9th Cir. 1996).   "If the evidence can reasonably support

9   either affirming or reversing," the reviewing court "may not

10  substitute its judgment" for that of the Commissioner.   Id. at

11  720-21.

12  **IV.   THE EVALUATION OF DISABILITY**

13      People are "disabled" for purposes of receiving Social

14  Security benefits if they are unable to engage in any substantial

15  gainful activity owing to a physical or mental impairment that is

16  expected to result in death or has lasted, or is expected to

17  last, for a continuous period of at least 12 months.   42 U.S.C.

18  § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

19  1992).

20      A.   The Five-Step Evaluation Process

21      The ALJ follows a five-step sequential evaluation process to

22  assess whether a claimant is disabled.   20 C.F.R.

23  §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821,

24  828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).   In the first

25  step, the Commissioner must determine whether the claimant is

26  currently engaged in substantial gainful activity; if so, the

27  claimant is not disabled and the claim must be denied.

28  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

3

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, she is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  <u>Id.</u>

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545, 416.945; <u>see</u> <u>Cooper</u> <u>v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

substantial gainful work available in the national economy.
§§ 404.1520(a)(4)(v), 416.920(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257.
That determination comprises the fifth and final step in the
sequential analysis.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);
<u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in
substantial gainful activity since January 5, 2010, the alleged
onset date.  (AR 12.)  At step two, she concluded that Plaintiff
had severe impairments of tendonitis, right-knee osteoarthritis,
"history of chondromalacia patella grade III, status post-
surgery," lumbar-disc disease with radiculitis, right-shoulder
impingement, "right carpal tunnel syndrome," adjustment disorder
"with anxious mood," and migraine headaches.  (<u>Id.</u>)  At step
three, the ALJ determined that Plaintiff's impairments did not
meet or equal a listing.  (AR 13.)

At step four, the ALJ found that Plaintiff had the RFC to
perform light work with additional restrictions.  (AR 14.)
Plaintiff was precluded from repetitive, constant pushing and
pulling with her right lower extremity but could occasionally
bend, stoop, climb steps, balance, kneel, crouch, crawl, and
squat.  (<u>Id.</u>)  She was precluded from repetitive, constant use of
"the right upper extremity of the right dominant hand."  (<u>Id.</u>)
She could occasionally climb ladders, ropes, or scaffolds but was
precluded from working around moving machinery and other hazards.
(<u>Id.</u>)  She was to "avoid concentrated exposure to vibration,
extreme temperatures, and walking on uneven terrain."  (<u>Id.</u>)  She
was also "to avoid jobs that require hypervigilance or intense

5

concentration on a particular task" for which she "could not be off tasks [sic] even for a briefest amount of time" or for which "safety might be an issue."  (<u>Id.</u>)

Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as an employment-claim aide, census taker, and medical service technician.  (AR 20.)  Accordingly, she found her not disabled.  (AR 21.)

**V.  DISCUSSION**

Plaintiff claims that the ALJ erred in finding that her impairments did not meet or equal Listing 1.03 and in assessing her credibility.  (J. Stip. at 3.)  For efficiency, the Court addresses Plaintiff's contentions in reverse order.

A.  <u>The ALJ Properly Assessed Plaintiff's Credibility</u>

1.  <u>Applicable law</u>

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  <u>See</u> <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986) (as amended).  "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'"  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  <u>See</u> <u>Lingenfelter</u>, 504 F.3d at 1035-36.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the

6

pain or other symptoms alleged.'" <u>Id.</u> at 1036 (quoting <u>Bunnell</u>

<u>v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If

such objective medical evidence exists, the ALJ may not reject a

claimant's testimony "simply because there is no showing that the

impairment can reasonably produce the <u>degree</u> of symptom alleged."

<u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in

original).

    If the claimant meets the first test, the ALJ may discredit

the claimant's subjective symptom testimony only if she makes

specific findings that support the conclusion.  <u>See</u> <u>Berry v.</u>

<u>Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or

affirmative evidence of malingering, the ALJ must provide "clear

and convincing" reasons for rejecting the claimant's testimony.

<u>Brown-Hunter v. Colvin</u>, 798 F.3d 749, 755 (9th Cir. 2015);

<u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th

Cir. 2014); <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 & n.9 (9th Cir.

2014).

    In assessing a claimant's credibility, the ALJ may consider,

among other factors, (1) ordinary techniques of credibility

evaluation, such as the claimant's reputation for lying, prior

inconsistent statements, and other testimony by the claimant that

appears less than candid; (2) unexplained or inadequately

explained failure to seek treatment or to follow a prescribed

course of treatment; (3) the claimant's daily activities; (4) the

claimant's work record; and (5) testimony from physicians and

third parties.  <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 795 F.3d 1177,

1186 (9th Cir. 2015); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59

(9th Cir. 2002).  If the ALJ's credibility finding is supported

1   by substantial evidence in the record, the reviewing court "may

2   not engage in second-guessing."   Thomas, 278 F.3d at 959.

3              2.   Relevant background

4        In an Exertion Questionnaire completed on February 18, 2011,

5   Plaintiff stated that her arms hurt when she carried a laundry

6   basket or held a cell phone "too long."  (AR 224-25.)  She would

7   drop her keys and other "normal things" from her hands.  (AR

8   224.)  Although she never timed how long she could walk, she

9   could walk at the mall.  (Id.)  Plaintiff was able to climb

10  stairs, but her legs would hurt and her knees would "buckle up"

11  so that she couldn't "stand in attention."  (AR 225.)  Plaintiff

12  washed dishes "on a daily basis" (id.) but could not mop or

13  vacuum (AR 226).  She could drive for 30 to 45 minutes.  (AR

14  225.)  In the section asking whether she used any assistive

15  devices for walking, Plaintiff stated, "Have use[d] crutches to

16  go to work and cane when my leg hurts a lot," and "Have used a

17  walker to get to work also."  (AR 226.)  She also used a splint

18  on her left arm after an accident in December 2009.  (Id.)

19       At the hearing, Plaintiff testified that she fell on the

20  escalator at work and twisted her right leg and right arm.  (AR

21  38-39; see AR 311 (injury occurred in Oct. 2009).)  In December

22  2009, she was hit by a car.  (AR 39; see AR 507 (car hit

23  Plaintiff's left elbow).)  She testified that she had pain in her

24  right knee, legs, neck, shoulder, back, and wrist (AR 43, 46, 48)

25  and rated her daily pain eight on a scale of 10 even with pain

26  medication (AR 43).  She stated that she wasn't able to type

27  because of forearm pain.  (AR 47-48.)  Wearing a brace "help[ed]

28  a little bit," but ever since her accident the pain was "so

8

piercing" that she couldn't type.  (AR 48.)  She later testified, however, that she could lift her arms overhead (AR 46), reach out in front (id.), and move her neck up, down, left, and right without any problems (AR 49).  Plaintiff testified that she last worked at all, two days a month, in October 2010, and that her most recent full-time work ended in January 2009.  (AR 35-37.)  On dates significantly later than that, however, Plaintiff complained to doctors or other medical providers of stress "at work."  (See, e.g., AR 404 (Plaintiff complaining in March 2011 that "for several months she has been under increased stress at work as well as through the National Guard"), 544 (complaining in April 2011 of "feeling harassed by supervisors at both civilian work at [sic] with Natl Guard").)  She acknowledged that she continued to seek full-time employment after her alleged onset date.  (AR 42.)

Plaintiff testified that in October 2011 she had surgery on her right knee to "take her meniscus out."[2]  (AR 46.)  She stated that "it still hurt[]" and was "still painful," "too painful to even exercise."  (Id.)  When the ALJ asked her if she ever did physical therapy for her knees, she said no.  (AR 47.)

Plaintiff testified that she could stand or walk for an hour without needing to sit and could sit for a "couple of hours" before needing to get up.  (AR 41.)  She needed help lifting groceries.  (Id.)  She had a valid driver's license and could

---

[2] Meniscus is cartilage that cushions the space between the bones in the knee.  See Knee arthroscopy, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/002972.htm (last updated Jan. 17, 2013).  Surgery is used to repair or remove torn meniscus.  See id.

1   "drive okay."  (Id.)

2       Plaintiff further testified that she suffered from severe

3   migraine headaches about three or four times a month.  (AR 49-

4   50.)[3]  She was depressed because she couldn't "function like

5   [she] did before."  (AR 50.)

6           3.  Analysis

7       The ALJ found that "[Plaintiff's] allegations concerning the

8   intensity, persistence and limiting effects of her symptoms

9   [were] partially credible."  (AR 15; see also AR 17 (finding

10  Plaintiff's allegations "not entirely credible").)  As discussed

11  below, she provided clear and convincing reasons for doing so.

12      The ALJ found that Plaintiff's alleged symptoms and

13  limitations were "greater than expected in light of the objective

14  evidence of record as a whole."  (AR 15-16.)  Specifically, she

15  noted that the record contained "no restrictions recommended by

16  the treating doctor" and "no significant diagnostic findings."

17  (AR 16.)  She summarized the results of numerous x-rays and MRIs

18  showing mild or unremarkable findings.  (AR 18.)  For example, a

19  November 2009 x-ray of her right elbow showed no evidence of

20  fracture, dislocation, or acute osseous abnormality.  (AR 316.)

21  A December 2009 x-ray of her left elbow after her car accident

22  showed no fracture or subluxation, bony mineralization within

23  normal limits, and unremarkable alignment.  (AR 384.)  A December

24  2009 MRI of her lower back revealed minor facet arthropathy[4] but

25

26      [3] In September 2012, she apparently told a chiropractor that
    her headaches were "mild . . . with pounding."  (AR 567.)

27

28      [4] Arthropathy is disease affecting a joint.  See Stedman's
                                        (continued...)

                                   10

was otherwise unremarkable. (AR 315.) A February 2010 x-ray of her left shoulder showed no detectable abnormality. (AR 383.) A May 2010 MRI of her cervical spine revealed small disc protrusions but no neural impingement. (AR 382.) A July 2010 MRI of her right shoulder showed mild impingement with tendonitis but no evidence of rotator-cuff tear. (AR 572.)

The ALJ also noted that there was "no evidence of atrophy in [Plaintiff's] evidence as a whole" (AR 16), later citing a February 2011 treatment note in which one of Plaintiff's treating physicians observed "no evidence of any obvious muscle atrophy" in her shoulders, arms, forearms, or hands (AR 17, 373). See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (as amended) (affirming ALJ's discounting of claimant's allegations, including that claimant "did not exhibit muscular atrophy"); Spurlock v. Colvin, No. EDCV 14-01521-JEM, 2015 WL 1735196, at *8 (C.D. Cal. Apr. 16, 2015) (finding that lack of muscle atrophy is legitimate consideration in evaluating claimant's credibility). The ALJ was entitled to consider the lack of objective medical evidence in assessing Plaintiff's credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's

---

[4] (...continued)
Medical Dictionary 150 (27th ed. 2000).

subjective testimony."); <u>Lingenfelter</u>, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

The ALJ also found Plaintiff not entirely credible because her statements regarding her symptoms and limitations were "generally . . . inconsistent and unpersuasive." (AR 16.)  She noted that although Plaintiff testified that she had pain in her right knee, leg, neck, shoulder, back, and wrist (AR 43, 46, 48) and rated her daily pain eight on a scale of 10 even with pain medication (AR 43), she also said that she could lift her arms overhead (AR 46), reach out in front (<u>id.</u>), and move her neck up, down, left, and right without any problems (AR 49).  The ALJ noted that although Plaintiff alleged that she was depressed and could not function like she used to, she "did not demonstrate or manifest any difficulty concentrating during the hearing," and she "appeared to process the questions without difficulty, and to respond to the questions appropriately and immediately." (AR 17; <u>see</u> AR 50.)  Moreover, as the ALJ noted, even after her alleged onset date, Plaintiff held herself out as available for work by receiving unemployment benefits and applying for jobs. (AR 35-37, 42.)

These inconsistencies were a clear and convincing reason for discrediting Plaintiff's allegations.  <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (in assessing credibility, ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements); <u>Carmickle</u>, 533 F.3d at 1161-62 (noting that receipt of unemployment benefits can undermine claimant's allegations if she held herself out as available to work); <u>Reyes v. Colvin</u>, No.

CV 13-4850-MAN, 2015 WL 349352, at *7 (C.D. Cal. Jan. 23, 2015)
(finding that ALJ gave clear and convincing reason for
discrediting claimant's testimony when she alleged difficulty
with paying attention but answered questions at hearing "cogently
and rationally without undue hesitation").

The ALJ also discredited Plaintiff's allegations because the
record showed that her treatments were "essentially routine and
conservative in nature." (AR 16.) Specifically, the "lack of
more aggressive treatment[,] surgical intervention or even a
referral to a specialist" suggested that her symptoms and
limitations were not as severe as she alleged. (Id.) Although
Plaintiff did in fact see several specialists — two orthopedic
surgeons for her knee, shoulders, elbows, and arms (see AR 372)
and a specialist in physical medicine and rehabilitation for her
neck (see AR 443, 447) — none of them recommended surgery (see AR
371-74, 415-17, 443-48). Plaintiff testified at the hearing that
she had surgery in October 2011 to "take her meniscus out" (AR
46), but the record contains no medical evidence of such a
surgery. Additionally, Plaintiff "responded well" and could
"walk better" after injections to her knee (AR 371-72) and had
"good pain relief" from injections to her neck (AR 443, 447).

Although some courts have held that injections do not
constitute conservative treatment, those cases involved claimants
whose pain was treated (generally ineffectively) with a series of
regular injections and more invasive procedures. See, e.g.,
Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010)
(treatment with narcotic pain medication, occipital nerve blocks,
trigger-point injections, and cervical-fusion surgery not

conservative); <u>Christie v. Astrue</u>, No. CV 10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with "narcotic pain medication, steroid injections, trigger point injections, epidural shots, and cervical traction" not conservative); <u>Samaniego v. Astrue</u>, No. EDCV 11-865 JC, 2012 WL 254030, at *4 (C.D. Cal. Jan. 27, 2012) (treatment not conservative when claimant was treated "on a continuing basis" with steroid and anesthetic "trigger point injections," occasional epidural injections, and narcotic medication and doctor recommended "significantly invasive surgery"); <u>Huerta v. Astrue</u>, No. EDCV 07-1617-RC, 2009 WL 2241797, at *4 (C.D. Cal. July 22, 2009) (treatment by surgery and "a series of epidural steroid injections into [claimant's] cervical spine" not conservative).  Here, Plaintiff received injections only as needed and not as part of a regular treatment plan that also involved more aggressive treatment, like surgery.

That Plaintiff received only conservative care was a clear and convincing basis on which to discount her complaints of disabling pain.  <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1040 (9th Cir. 2008) (that claimant "did not seek an aggressive treatment plan" and had favorable response to conservative treatment with physical therapy, transcutaneous-electrical-nerve-stimulation unit, lumbosacral corset, and anti-inflammatory medication undermined allegations of disabling impairment); <u>Parra</u>, 481 F.3d at 751 (evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment); <u>Walter v. Astrue</u>, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly

14

discredited claimant's allegations based on conservative treatment consisting of medication, physical therapy, and injection).  Even if the ALJ erred on this basis because Plaintiff's occasional injections constituted nonconservative care, any error was harmless given that she provided other, acceptable reasons for discrediting Plaintiff.  See Carmickle, 533 F.3d at 1162-63 (finding error harmless when ALJ cited other reasons to support credibility determination).

The ALJ also discounted Plaintiff's testimony because her daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 16.)  For example, Plaintiff testified that she was "able to drive okay" and stand for an hour without needing to sit.  (AR 41.)  She also indicated in her Exertion Questionnaire that she could drive for 30 to 45 minutes, walk at the mall, and wash dishes every day.[5]  (AR 224-25.)  As the ALJ noted, "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 16.)  The ALJ was entitled to discredit Plaintiff's testimony on this basis as well.  See Molina, 674 F.3d at 1112 (ALJ may discredit claimant's testimony when "claimant engages in daily activities inconsistent with the alleged symptoms" (citing Lingenfelter, 504 F.3d at 1040)); id. at 1113 (ALJ may discredit claimant's testimony when claimant

_____

[5] In March 2011, Plaintiff told a psychiatrist that she "enjoys going to movies, concerts and yoga." (AR 405.)

1  "reports participation in everyday activities indicating
2  capacities that are transferable to a work setting").

3      In sum, the ALJ provided clear and convincing reasons for
4  finding Plaintiff partially credible.  Because those findings
5  were supported by substantial evidence, this Court may not engage
6  in second-guessing.  See Thomas, 278 F.3d at 959.  Plaintiff is
7  not entitled to remand on this ground.

8      B.   The ALJ Properly Found that Plaintiff's Impairments Did
9           Not Meet or Equal Listing 1.03

10     Plaintiff contends that her impairments met or equaled
11 Listing 1.03 and the ALJ therefore erred in finding that her
12 impairments did not meet or equal a listing.  (J. Stip. at 3-10.)

13          1.   Applicable law

14     At step three of the sequential evaluation process, the ALJ
15 must evaluate the claimant's impairments to see if they meet or
16 medically equal those in the Listings.  See §§ 404.1520(d),
17 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.
18 1999).  Listed impairments are those that are "so severe that
19 they are irrebuttably presumed disabling, without any specific
20 finding as to the claimant's ability to perform his past relevant
21 work or any other jobs."  Lester, 81 F.3d at 828.

22     The claimant has the initial burden of proving that an
23 impairment meets or equals a listing.  See Sullivan v. Zebley,
24 493 U.S. 521, 530-31 (1990).  "To meet a listed impairment, a
25 claimant must establish that he or she meets each characteristic
26 of a listed impairment relevant to his or her claim."  Tackett,
27 180 F.3d at 1099 (emphasis in original).  "To equal a listed
28 impairment, a claimant must establish symptoms, signs and

16

laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is <u>not</u> listed, then to the listed impairment 'most like' the claimant's impairment." <u>Id.</u> (quoting § 404.1526) (emphasis in original). Medical equivalence, moreover, "must be based on medical findings"; "[a] generalized assertion of functional problems is not enough to establish disability at step three." <u>Id.</u> at 1100 (citing § 404.1526).

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990). The ALJ does not err by discussing the evidence supporting her conclusion only in other sections of her decision. <u>See</u> <u>id.</u> at 1200-01 (finding no error when ALJ failed to state or discuss evidence supporting conclusion that claimant's impairments did not satisfy Listing but "made a five page, single-spaced summary of the record"); <u>Lewis</u>, 236 F.3d at 512-13 (ALJ required "to discuss and evaluate the evidence that supports his or her conclusion," but no error when ALJ does not "do so under the heading 'Findings'"). Moreover, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." <u>Burch</u>, 400 F.3d at 683.

An ALJ's decision that a claimant did not meet a listing

17

must be upheld if it was supported by "substantial evidence."
See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th
Cir. 2006).  Substantial evidence is "more than a mere scintilla
but less than a preponderance; it is such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.
1997) (per curiam) (citing Andrews v. Shalala, 53 F.3d 1035, 1039
(9th Cir. 1995)).  When evidence is susceptible of more than one
rational interpretation, the Court must uphold the ALJ's
conclusion.  Id.

In order to meet Listing 1.03, a claimant must establish
"[r]econstructive surgery or surgical arthrodesis[6] of a major
weight-bearing joint, with inability to ambulate effectively
. . . and return to effective ambulation did not occur, or is not
expected to occur, within 12 months of onset."  20 C.F.R. pt.
404, subpt. P, app. 1 § 1.03.  "[I]nability to ambulate
effectively" means "an extreme limitation of the ability to walk;
i.e., an impairment(s) that interferes very seriously with the
individual's ability to independently initiate, sustain, or
complete activities."  Id. § 1.00(B)(2)(b)(1).  The claimant must
show that she was unable to "sustain[] a reasonable walking pace
over a sufficient distance to be able to carry out activities of
daily living" — for example, that she required an assistive
device limiting the use of both upper extremities, such as a

---

[6] Arthrodesis is the surgical fusion of bones for replacing
or repairing damaged joints.  See Osteoarthritis, MedlinePlus,
http://www.nlm.nih.gov/medlineplus/ency/article/000423.htm (last
updated Feb. 8, 2015); see also Stedman's Medical Dictionary,
supra, at 149.

walker, two crutches, or two canes; could not "walk a block at a reasonable pace on rough or uneven surfaces"; could not use public transportation; or could not carry out routine walking activities, "such as shopping and banking."  <u>See</u> <u>id.</u> § 1.00(B)(2)(b)(2).

### 2. <u>Analysis</u>

In finding that Plaintiff's impairments did not meet or equal a listing, the ALJ noted that she considered "all the impairments specifically Listings 1.02, 1.04, and 11.00."  (AR 13.)  She explained, "No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment."  (<u>Id.</u>)

The ALJ did not err in failing to specifically explain her step-three finding as to Listing 1.03.  As an initial matter, Plaintiff never argued at the hearing that she met or equaled Listing 1.03.  (<u>See</u> AR 34-35 (Plaintiff's counsel declining to give opening statement)); <u>Burch</u>, 400 F.3d at 683 (ALJ not required to discuss whether impairments equal listing unless claimant "presents evidence in an effort to establish equivalence").  Moreover, the ALJ's seven-page discussion of the medical evidence at step four provided adequate factual support for her finding.  (AR 14-20); <u>Gonzalez</u>, 914 F.2d at 1200-01 (finding no error in failure to discuss why claimant's impairments did not satisfy listing because ALJ's four-page evaluation of evidence was adequate statement of factual foundations); <u>Nance v. Colvin</u>, No. CV 13-4633-DFM, 2014 WL

1  3347027, at *2-3 (C.D. Cal. July 8, 2014) (ALJ did not err in
2  failing to discuss Listing 1.03 when he found that claimant did
3  not meet or equal listings 1.02, 1.04, or 3.03 and reviewed
4  claimant's medical history in detail).

5      Plaintiff's reliance on Marcia v. Sullivan, 900 F.2d 172,
6  174 (9th Cir. 1990) (J. Stip. at 8-9), is misplaced.  As the
7  Ninth Circuit has observed, "Marcia simply requires an ALJ to
8  discuss and evaluate the evidence that supports his or her
9  conclusion; it does not specify that the ALJ must do so under the
10  heading 'Findings.'"  Lewis, 236 F.3d at 513.  As discussed, the
11  ALJ thoroughly discussed the medical evidence in step four.

12      In any event, Plaintiff fails to establish that she had
13  reconstructive surgery or surgical arthrodesis on a major weight-
14  bearing joint as required under Listing 1.03.  As discussed in
15  Section V.A, none of Plaintiff's treating physicians recommended
16  surgery, and the record contains no evidence of the October 2011
17  meniscus-removal surgery about which Plaintiff testified at the
18  hearing.[7]  In any event, meniscus removal is not equivalent to
19  knee reconstruction or fusion.  See Nance, 2014 WL 3347027, at *3
20  (finding that claimant had failed to show that knee arthroscopies
21  involved reconstruction or surgical arthrodesis because they
22  appeared to be "minimally invasive" surgeries).  Indeed, when
23  asked by the ALJ if her surgery was a "total knee replacement,"
24  Plaintiff said no.  (AR 46.)  Thus, Plaintiff has not shown that
25  she satisfied Listing 1.03's first requirement.

26
27
   _____
28      [7] Plaintiff did not submit any additional evidence to the
   Appeals Council.  (See AR 6.)

                              20

Plaintiff also fails to establish that she was unable to walk effectively.  After falling and hurting her right knee in October 2009, Plaintiff was treated with pain medication and therapy.  (See AR 310-13.)  A doctor noted that Plaintiff's gait was normal and that heel and toe walking were normal for both legs.  (AR 312.)  Plaintiff did not complain about knee pain again until November 2010.  (See AR 445-47.)  John Chase, an orthopedic surgeon, noted that Plaintiff's right knee "was a new problem to [him]" and that his earlier treatment notes involved only Plaintiff's neck and upper extremities.  (AR 445.)  After examining her right knee, he indicated, "no objective findings of abnormality."  (AR 446.)  On December 29, 2010, Baer Rambach, an orthopedic surgeon, diagnosed chondromalacia patella[8] grade 3, treated Plaintiff's right knee with corticosteroid injections, and advised her to apply an ice pack and take extra-strength Tylenol, Advil, or Aleve for pain relief.  (AR 374.)  On February 2, 2011, Dr. Rambach noted that Plaintiff "responded well" to the injection and could "walk better."  (AR 371-72.)  She received an additional injection on March 16, 2011.  (AR 371.)  The record does not contain any other medical evidence regarding her right knee.

Although Plaintiff stated in her Exertion Questionnaire that she had used a walker, crutches, and a cane to get to work, she also specified that she used them "when [her] leg hurts a lot,"

---

[8] Chondromalacia patella is a general term for describing damage to the cartilage under the kneecap.  See Chrondromalacia patella, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/chondromalacia-patella/basics/definition/con-20025960?p=1 (last updated Feb. 5, 2013).

1  failing to indicate how often her leg pain required her to use
2  the devices.  (AR 226.)  Moreover, no physician prescribed a
3  walker, cane, or crutches or indicated that Plaintiff needed them
4  to walk.  And as discussed in Section V.A, the ALJ properly found
5  Plaintiff only partially credible and discounted her allegations
6  of disabling pain in her right knee.  (See AR 15-17.)  Such
7  evidence fails to show that Plaintiff was unable to walk
8  effectively.

9       Plaintiff argues that the ALJ's RFC finding that she should
10  "avoid" uneven terrain establishes an inability to walk
11  effectively.  (J. Stip. at 6-7; see AR 14.)  But the ALJ found
12  that Plaintiff should avoid walking on uneven terrain as part of
13  her work, not that she couldn't do so at all.[9]  (AR 14); see
14  Moreno v. Astrue, 444 F. App'x 163, 164 (9th Cir. 2011) (finding
15  that claimant's limitation to walking on even terrain did not
16  establish inability to walk effectively because RFC "did not
17  state that [claimant] was incapable of walking on uneven
18  surfaces, only that he should avoid doing so in his employment");
19  Nance, 2014 WL 3347027, at *4 (finding that inability to walk on
20  uneven terrain, by itself, does not establish inability to walk
21  effectively under Listing 1.03).  Further, Plaintiff testified
22  that she was "able to drive okay" and stand for one hour (AR 41),
23  and she stated in her Exertion Questionnaire that she could drive
24  for 30 to 45 minutes, walk at the mall, wash dishes every day,
25  and go grocery shopping once a week (AR 224-25).  Thus, contrary

26

27       [9] As structured, the relevant sentence in the ALJ's decision
28  actually says that Plaintiff should avoid "concentrated exposure"
    to "walking on uneven terrain," among other things.  (AR 14.)

1   to one of the Listing's examples of ineffective ambulation,

2   Plaintiff was able "to carry out routine ambulatory activities,

3   such as shopping and banking."  20 C.F.R. pt. 404, subpt. P, app.

4   1 § 1.00(B)(2)(b)(2).

5       Plaintiff also argues that the ALJ failed to properly

6   consider her obesity in evaluating whether she met a listing.

7   (J. Stip. at 7-8.)  As a general rule, an ALJ must determine the

8   effect of a claimant's obesity upon her other impairments and

9   ability to work.  <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th Cir.

10  2003); <u>see also</u> SSR 02-1p, 2002 WL 34686281, at *3-7 (Sept. 12,

11  2002) (requiring ALJ to consider effects of obesity at several

12  points in five-step sequential evaluation).  An ALJ must

13  "evaluate each case based on the information in the case record,"

14  as obesity may or may not increase the severity or functional

15  limitations of other impairments.  SSR 02-1p, 2002 WL 34686281,

16  at *6.

17      Here, the ALJ confirmed Plaintiff's height and weight at the

18  hearing (AR 40), and in her decision she observed that Plaintiff

19  "has a history of obesity" and that her weight of 160 pounds and

20  height of five feet resulted in a body-mass index of 31.2 (AR

21  12).  In her step-two finding, she stated that she "ha[d]

22  considered the potential impact of obesity in causing or

23  contributing to co-existing impairments."  (AR 13.)  The ALJ then

24  concluded that "there [wa]s no evidence of any specific or

25  quantifiable impact on pulmonary, musculoskeletal, endocrine, or

26  cardiac functioning."  (<u>Id.</u>)  Accordingly, she found that

27  Plaintiff's obesity was not a severe impairment.  (<u>Id.</u>)  She

28  further noted that in determining Plaintiff's RFC, she had

23

considered Plaintiff's obesity's "impact on her ability to ambulate as well as her other body systems." (Id.)  Moreover, except for a passing comment that she had been gaining weight because her knee pain kept her from exercising (AR 46), Plaintiff did not present any testimony or other evidence that her obesity impaired her ability to work (see AR 35-50).  For all these reasons, Plaintiff has not shown that the ALJ failed to consider her obesity or that she was prejudiced as a result.  See Burch, 400 F.3d at 684 (finding that ALJ did not err in failing to consider obesity at step three because claimant did not point to "any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis," and only evidence relating to obesity was "notes from doctors who observed weight gain, indicated that [claimant] is obese, and recommended that she participate in a medically supervised weight loss program.").

Plaintiff is not entitled to remand on this ground.

1  **VI.   CONCLUSION**

2       Consistent with the foregoing, and under sentence four of 42

3  U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered

4  AFFIRMING the decision of the Commissioner, DENYING Plaintiff's

5  request for remand, and DISMISSING this action with prejudice.

6  IT IS FURTHER ORDERED that the Clerk serve copies of this Order

7  and the Judgment on counsel for both parties.

8

9  DATED: October 9, 2015

10                                 JEAN ROSENBLUTH
                               U.S. Magistrate Judge

---

27      [10] That sentence provides: "The [district] court shall have
power to enter, upon the pleadings and transcript of the record,
28  a judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."